# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HILTON LLOYD KELLER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:06-CV-661 JPG ) |
| ADRIAN FEINERMAN and DR. ELYEA, | ) ) |
| Defendants. | ) ) ) ) |

## **OPINION**

RICHARD MILLS,[1] U.S. District Judge:

Hilton Keller is one of approximately 45,000 inmates in the custody of the Illinois Department of Corrections.

As the medical director for the Illinois Department of Corrections, Dr. Willard Elyea was responsible for the overall administration of medical services delivered to inmates incarcerated throughout the state.

Keller alleges that Dr. Elyea violated his constitutional rights when he failed to properly treat Keller's serious medical condition.

Because Dr. Elyea is entitled to qualified immunity, the Court will Allow his

---

[1]Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

motion for summary judgment.

## I. BACKGROUND

This is a civil rights action pursuant to 42 U.S.C. § 1983, wherein Plaintiff Hilton Keller alleges that his constitutional rights were violated while he was incarcerated. The Plaintiff claims that Dr. Willard Elyea, one of the Defendants, was deliberately indifferent to his serious medical needs, an assertion that Dr. Elyea disputes. Dr. Elyea also claims that he lacks the requisite personal involvement in the alleged constitutional deprivation.

The Plaintiff was an inmate incarcerated at Menard Correctional Center for all dates referred to in his Complaint. Dr. Elyea never personally treated the Plaintiff for any of his medical problems, though the Plaintiff claims that Dr. Elyea was on notice of the Plaintiff's treatment. The Plaintiff claims to have sent three letters to Dr. Elyea regarding his medical treatment. The Defendant alleges that Dr. Elyea has no recollection of ever receiving any of the Plaintiff's letters.

As agency medical director, Dr. Elyea was responsible for the overall administration of medical services delivered to approximately 45,000 adult and juvenile inmates in the custody of the Illinois Department of Corrections at various institutions located throughout the state. His duties included supervising the office of health services, monitoring the provisions of health services in adult and juvenile

facilities, and reviewing and monitoring health care budget requests.

The Defendant alleges that Dr. Elyea did not review or investigate the Plaintiff's medical treatment. The Plaintiff disputes that assertion. Dr. Elyea denies having any personal involvement in the Plaintiff's treatment, which the Plaintiff also disputes. The Defendants further assert that Plaintiff admitted that he only named Willard Elyea as a Defendant in this action because he was the head medical director of the State of Illinois and refused to afford him different medical treatment from that which was being provided by the medical staff at Menard Correctional Center. The Plaintiff denies these allegations.

The Plaintiff contends that he was subjected to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments. Dr. Elyea moves for summary judgment, claiming that he was not deliberately indifferent to the Plaintiff's serious medical needs. He also contends that he lacked sufficient personal involvement to support a finding of liability for any alleged constitutional deprivations.

## II. ANALYSIS

### A. Summary judgment standard

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment

as a matter of law.  Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.  The Court construes all facts and makes all reasonable inferences in favor of the non-moving party. Magin v. Monsanto Co., 420 F.3d 679, 686 (7th Cir. 2005).

B. Personal involvement in alleged constitutional violations

The Defendant claims that summary judgment as a matter of law is appropriate because the Plaintiff cannot show that Dr. Elyea was personally involved in any alleged constitutional violations.  Because an action pursuant to section 1983 is against a "person," in order to recover damages, a plaintiff must show that a defendant was personally responsible for any such constitutional deprivation.  See Knight v. Wiseman, 590 F.3d 458, 462-63 (7th Cir. 2009).  "To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. at 463 (internal quotation marks and citations omitted). Section 1983 does not support claims based on a *respondeat superior* theory of liability.  See Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir. 1996).  Thus, the official must actually have participated in the alleged deprivation.  See id.

4

Relying on <u>Crowder v. Lash</u>, 687 F.2d 996 (7th Cir. 1982), the Defendant asserts that notification of constitutional deprivations provided by an inmate to a prison official by way of letter or personal conversation is insufficient to impose liability on a defendant under section 1983. <u>See</u> <u>id.</u> at 1006. In <u>Crowder</u>, the plaintiff had informed the Indiana Commissioner of Corrections of his living conditions and the deprivations he endured. <u>See</u> <u>id.</u> In concluding that was not enough for a defendant to be personally liable, the court explained:

> The logical import of this theory, however, would be to hold any well informed Commissioner of Corrections personally liable for damages flowing from any constitutional violation occurring at any jail within that Commissioner's jurisdiction. We believe that such a broad theory of liability is inconsistent with the personal responsibility requirement for assessing damages against public officials in a section 1983 action.

<u>Id.</u> Dr. Elyea claims that he is only linked through this cause of action through his supervisory position. The Plaintiff stated in his deposition testimony that the Defendant never personally took any actions which violated his constitutional rights, but merely was in charge of the system. Dr. Elyea had no personal involvement in the Plaintiff's treatment. Moreover, Dr. Elyea alleges that he does not even recall receiving letters from the Plaintiff.

In his response, the Plaintiff states that he is not alleging that he is relying on a *respondeat superior* theory of liability based on Dr. Elyea's supervisory role. The

Plaintiff asserts that the doctor was involved in his treatment and thus responsible for the alleged constitutional deprivation. The Plaintiff points to several cases which suggest that Crowder is no longer followed when considering whether the receipt of a letter is sufficient to establish personal involvement.

In Gentry v. Duckworth, 65 F.3d 555 (7th Cir. 1995), the Seventh Circuit observed that it was "a reasonable construction of Gentry's pled facts that Duckworth knew of the denial of scribe materials, even if only by the many letters Gentry sent him." Id. at 561. Duckworth was the superintendent of the Indiana State Reformatory, where Gentry was incarcerated. See id. at 557. Because Gentry did not appeal the district court's denial of his application to proceed in forma pauperis against the Commissioner of the Indiana Department of Correction, the court did not consider whether letters were enough to put someone holding that position on notice. See id. at 557-58 n.1. Thus, the court in Duckworth did not have occasion to revisit Crowder. Because it involves an official at the facility where the plaintiff was incarcerated, Duckworth is not analogous to this case.

In Reed v. McBride, 178 F.3d 849 (7th Cir. 1999), the defendants included the correctional facility's superintendent and the Commissioner and Regional Director of the Indiana Department of Correction. See id. at 851. The plaintiff in Reed alleged that defendants violated the Eighth Amendment prohibition against cruel and unusual

punishment by failing to provide for basic human needs like food and life-sustaining medication. See id.  The court in Reed observed that the record showed that plaintiff had sent three letters of complaint to the defendants and the defendants acknowledged receipt of at least two of the letters. See id. at 854.  The court found that this was enough to put the defendants on notice of the plaintiff's complaints.  The Plaintiff asserts that this case establishes that letters sent to high-ranking prison officials may create the necessary involvement to establish liability.

The facts in Reed are quite similar to those in this case.  Like one of the defendants in Reed, Dr. Elyea was a high-ranking prison official who had some degree of responsibility for every inmate in state custody.  As the medical director of the Department of Corrections, Dr. Elyea was responsible for the administration of medical services delivered to all inmates.  In Reed, the Commissioner of the Indiana Department of Correction would, presumably, have some degree of responsibility over all inmates in the State's custody, while the Regional Director would have had some responsibility for those inmates in a particular part of the State.  Although Reed seems somewhat inconsistent with Crowder, the court did not mention the earlier case. There are some differences between the two cases.  In Reed, the court was reviewing the district court's grant of summary judgment, see 178 F.3d at 851, while in Crowder the court reviewed the district court's entry of a directed verdict, on grounds of lack

of personal responsibility, following the close of plaintiff's evidence. 687 F.2d at 1001.

Dr. Elyea was ultimately in charge of the administration of medical care delivered to tens of thousands of inmates. Presumably, because of his position, Dr. Elyea received a significant number of letters from inmates pertaining to their medical care. The Plaintiff's claims as to Dr. Elyea essentially assert that the doctor should have substituted his judgment for that of the physicians who were treating the Plaintiff at Menard. It is perhaps worth noting that it is somewhat unrealistic to expect one physician to be responsible for the day-to-day care of 45,000 patients. However, Reed suggests that a letter from an inmate may be enough to create a genuine issue of material fact as to whether the doctor had knowledge of facts that there was a substantial risk of serious harm. See Reed, 178 F.3d at 854. Accordingly, although Dr. Elyea was not really involved in the Plaintiff's medical treatment, the Court is unable to grant summary judgment on the basis that Dr. Elyea was not personally involved in the alleged constitutional violations.

### C. Qualified immunity

The Defendants next allege that Dr. Elyea is entitled to qualified immunity because he was not personally involved in the alleged constitutional deprivation. "Qualified immunity shields public officials from liability when they act in a manner

that they reasonably believe to be lawful." Gonzalez v. City of Elgin, 578 F.3d 526, 540 (7th Cir. 2009). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." Id. (citation omitted).

In determining whether a defendant is entitled to qualified immunity, courts examine (1) whether the facts, viewed in the light most favorable to the plaintiff, indicate that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established when the alleged violation occurred. See Gonzalez, 578 F.3d at 540. Courts may decide these questions in whatever order is best suited to the particular case. See id. Although the first question is one of law, the second requires a broader inquiry. See id. In this case, there is some confusion about the precise constitutional right at issue. The Court will consider whether Dr. Elyea violated the Plaintiff's clearly established constitutional rights.

"Since the purpose of qualified immunity is to protect public officials from guessing about constitutional developments at their peril, the plaintiffs have the burden of showing that the constitutional right was clearly established." Gonzalez, 578 F.3d at 540. A plaintiff can meet this burden by showing that there is "a clearly analogous case establishing the right to be free from the specific conduct at issue" or that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." Id. (quoting Smith v. City of Chicago,

242 F.3d 737, 742 (7th Cir. 2001)). If the qualified immunity inquiry involves disputed facts, then the issue is one for trial. See id.

The Defendant alleges that Dr. Elyea acted in good faith in the performance of his official duties and without violating the Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Dr. Elyea claims that, if he is found liable for constitutional violations without any personal involvement, the Court would be announcing new law of which the Defendant could not have been aware at the time he took the alleged actions.

The Plaintiff notes that the deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment prohibition against cruel and unusual punishment. See Hayes v. Snyder, 546 F.3d 516, 522 (7th Cir. 2008). There is no question that this general rule is clearly established. The Plaintiff claims that he has shown that he made every effort to inform Dr. Elyea of his serious medical condition. Nevertheless, his condition was not properly treated, which resulted in the Plaintiff enduring severe and ongoing pain. The Plaintiff observes that Dr. Elyea's qualified immunity argument is based on an assertion that no clearly established constitutional right has been pled. Relying on Hayes, the Plaintiff notes that this constitutional right has long been established. See Hayes, 546 F.3d at 528 ("It has been established for decades that prison physicians violate inmates' constitutional rights when they

deliberately disregard an inmate's serious medical condition").

The problem with the Plaintiff's argument is that Dr. Elyea was not the prison physician. Thus, the Plaintiff has not pointed to a "clearly analogous case" which addresses "the right to be free from the specific conduct at issue." The parties have defined the right at issue too narrowly for the qualified immunity analysis. The Court is not aware of any case which holds that the top medical official within a state's corrections department–a department which houses 45,000 inmates at numerous facilities–is deliberately indifferent to an inmate's serious medical needs by failing to address that inmate's concerns which were expressed in three letters.

The Court must now consider whether Dr. Elyea's conduct was "so egregious that no reasonable person would have believed that it would not violate clearly established rights." Given that there are tens of thousands of inmates in the custody of the Department of Corrections, the Court is unable to conclude that Dr. Elyea's alleged failure to properly treat the Plaintiff's serious medical condition constituted sufficiently egregious conduct. Dr. Elyea's alleged failure to act upon receiving three letters is not so obviously a constitutional violation that the only reasonable conclusion which results is that the Plaintiff's medical treatment violated his clearly established constitutional rights.

Accordingly, Dr. Elyea is entitled to qualified immunity. On that basis, the

Court will Allow Dr. Elyea's motion for summary judgment.

<u>Ergo</u>, the motion for summary judgment filed by Defendant Dr. Willard Elyea [d/e 55] is ALLOWED.  Dr. Elyea is entitled to summary judgment as to all claims asserted against him.

**IT IS SO ORDERED.**

**DATED: April 1, 2010**

<u>s/Richard Mills</u>
**RICHARD MILLS**
**United States District Judge**
