# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| HILTON LLOYD KELLER, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Case No. 3:06-CV-661 |
| ADRIAN FEINERMAN and DR. ELYEA, | ) |
| Defendants. | ) |

## OPINION

RICHARD MILLS,[1] U.S. District Judge:

For the following reasons, Defendant Adrian Feinerman's Motion for Summary Judgment [d/e 70] is denied.

## I. BACKGROUND

The Plaintiff, Hilton Keller, is a prisoner at the Menard Correctional Center, Menard, Illinois. Dr. Adrian Feinerman has been the Medical Director at Menard Correctional Center since 2005.

This is a civil rights action pursuant to 42 U.S.C. § 1983, wherein the

---

[1] Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

Plaintiff alleges that his constitutional rights have been violated during his incarceration. The Plaintiff claims that Dr. Feinerman was deliberately indifferent to his serious medical needs, an assertion that Dr. Feinerman disputes. Dr. Feinerman contends that he enjoys qualified immunity.

The Plaintiff suffers from gastroesophagael reflux disease (GERD). The Plaintiff claims that prior to Dr. Feinerman's appointment as Medical Director at Menard, the Plaintiff had sought medical attention from prison staff regarding his GERD symptoms. The Plaintiff claims that he had previously sought treatment for his GERD and throat pain. The Plaintiff claims that a Menard physician, Dr. Platt, recommended referral to an ear, nose, throat specialist (ENT) in 2004, but that this request was blocked by Dr. Faisal Ahmed, the Medical Director at that time.

The Plaintiff has had numerous other health care issues or complaints during his incarceration at Menard. For example, on June 29, 2005, the Plaintiff was sent to an outside facility so a lymph node biopsy could be performed.

Dr. Feinerman had his first visit with the Plaintiff during the Summer of 2005.[2] Prior to that appointment, Dr. Feinerman reviewed the Plaintiff's medical records and possessed general knowledge of the Plaintiff's medical history.

---

[2] The Parties dispute when the first appointment between the Plaintiff and Dr. Feinerman took place.

The Plaintiff claims that on August 1, 2005, August 22, 2005, and September 6, 2005, the Plaintiff complained to Dr. Feinerman about severe heartburn, shoulder pain, sore throat, abdominal pain, stomach cramps, and constipation. The Plaintiff claims that he repeatedly requested a referral to an ENT. Dr. Feinerman denies these allegations.

The Plaintiff claims that when he saw Dr. Feinerman again on November 30, 2005, he told Dr. Feinerman of his sore throat and hoarseness, and requested to see an ENT. The Plaintiff claims he was suffering severe pain throughout this period. Dr. Feinerman denies this allegation.

On February 26, 2006, the Plaintiff saw another physician, Dr. Ady. Dr. Ady determined that the Plaintiff's chronic hoarseness of voice was probably caused by GERD. Dr. Ady recommended that the Plaintiff see an ENT.

On March 17, 2006, Dr. Feinerman saw the Plaintiff, and noted that the hoarseness could have been caused by GERD. The Plaintiff was seen by another doctor on March 21, 2006, who recommended that the Plaintiff see an ENT.

The Plaintiff was sent to an ENT in early April of 2006, and the Plaintiff underwent a laryngael polypectomy on May 19, 2006.

During relevant periods, the Plaintiff had been prescribed medication, including Tagament and Prilosec. The Parties dispute whether the Plaintiff's

GERD treatment to date has been adequate since the surgery was performed in May of 2006.

The Parties agree on very few facts in this case. Before the Court are affidavits from both the Plaintiff and Dr. Feinerman, depositions from both Parties, and other documentation. The differing accounts of treatment are not reconcilable. In the summary judgment briefing, each party has denied the bulk of the opposing party's factual assertions.

## II. STANDARDS

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. The Court construes all facts and makes all reasonable inferences in favor of the non-moving party. Magin v. Monsanto Co., 420 F.3d 679, 686 (7th Cir. 2005).

## III. ANALYSIS

A. Deliberate Indifference

In order to establish a claim of deliberate indifference, a plaintiff must demonstrate (1) that he suffered from an objectively serious medical condition, and (2) that the defendant was deliberately indiferenct to the condition. See Zentmyer v. Kendall County, Ill., 220 F.3d 805, 810 (7th Cir. 2000).

*1. Objectively Serious Medical Condition*

The Defendant has not argued that GERD is not an objectively serious medical condition. In any event, the U.S. Court of Appeals for the Seventh Circuit has determined that GERD is a serious condition. See Greeno v. Daley, 414 F.3d 645 (7th Cir. 2005).

*2. Deliberate Indifference by Defendant*

"Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk. Deliberate indifference is intentional or reckless conduct, not mere negligence." Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (citations omitted).

> Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment. But a prisoner also is not required to show that he was literally ignored . . . A doctor's choice of the "easier and less efficacious treatment" for an objectively serious medical condition can still amount to deliberate indifference for the purposes of the Eighth Amendment. A

> significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain. In this context, courts may consider the cost of treatment alternatives when determining what constitutes adequate, minimum-level medical care, but medical personnel cannot simply resort to an easier course of treatment that they know is ineffective.

*Id.* at 441 (citations, quotation marks, and alteration omitted).

One of the key points made by the Court of Appeals in Berry is that a delay in effective treatment can support a claim of deliberate indifference, particularly in cases where the delay results in "prolonged and unnecessary pain." 604 F.3d at 441.

Recent Seventh Circuit decisions show that summary judgment is not appropriate when (1) a prisoner has an objectively serious medical condition that requires referral to a specialist, (2) the prison doctor refuses to make the referral, and (3) the prisoner is subjected to pain as a result. See Berry, 604 F.3d at 441 (holding that summary judgment was not appropriate when jailhouse medical staff refused to make dental referral for prisoner suffering tooth pain); Snyder v. Hayes, 546 F.3d 516, 526 (7th Cir. 2008) (holding that summary judgment was not appropriate when medical staff refused urology referral requested by prisoner suffering severe testicular pain associated with muscle cramps in his scrotum); Greeno v. Daley, 414 F.3d 645, 654 (7th Cir. 2005) (holding that summary judgment was not appropriate when a prisoner suffering from severe GERD was

given over-the-counter medication and denied referral to a specialist).

On the evidence before the Court, a jury could conclude that Dr. Feinerman persisted in an easier method to treat the Plaintiff's pain that he knew was ineffective. Viewing the facts in the light most favorable to the Plaintiff, the course of treatment was not effective and Dr. Feinerman was unable to identify the source of the Plaintiff's throat pain. A jury could conclude that Dr. Feinerman refused to refer the Plaintiff to an ENT specialist for a period of nearly a year.

It is unlikely that a civilian doctor would refuse to refer a patient to a specialist when the individual complains of severe pain, and repeatedly and specifically begs for a referral to a specialist.

Referring the Plaintiff to an ENT specialist would not have been an extraordinary measure. Instead, this would have been an inexpensive and conventional treatment option. See Ralston v. McGovern, 167 F.3d 1160, 1162 (7th Cir. 1999).

Therefore, summary judgment is not warranted in these circumstances.

The Defendant's Motion for Summary Judgment is alternatively denied because there are genuine issues of material fact. The accounts presented by the Parties are not reconcilable in favor of Dr. Feinerman based solely upon the papers before the Court. Ultimately, a trier of fact will have to make a credibility

determination in order to know which side to believe.

B. Qualified Immunity

Dr. Feinerman claims he is entitled to qualified immunity because he was relying upon "his experience and expertise in exercising his medical judgment in treating the patient." Def.'s Mem. in Supp. of Mot. for Summ. J. [d/e 71], 31. "Qualified immunity shields public officials from liability when they act in a manner that they reasonably believe to be lawful." Gonzalez v. City of Elgin, 578 F.3d 526, 540 (7th Cir. 2009).

In determining whether a defendant is entitled to qualified immunity, courts examine (1) whether the facts, viewed in the light most favorable to the plaintiff, indicate that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established when the alleged violation occurred. See Gonzalez, 578 F.3d at 540. Courts may decide these questions in whatever order is best suited to the particular case. See id.

*1. Constitutional Violation*

As detailed above, viewing the facts in the light most favorable to the Plaintiff, a jury could conclude that the Plaintiff's Constitutional Rights were violated.

*2. Clearly Established Rights*

The Court will consider whether Dr. Feinerman violated the Plaintiff's clearly established rights. "Since the purpose of qualified immunity is to protect public officials from guessing about constitutional developments at their peril, the plaintiffs have the burden of showing that the constitutional right was clearly established." Gonzalez, 578 F.3d at 540.

A plaintiff can meet this burden by showing that there is "a clearly analogous case establishing the right to be free from the specific conduct at issue" or that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." Id. (quoting Smith v. City of Chicago, 242 F.3d 737, 742 (7th Cir. 2001)). If the qualified immunity inquiry involves disputed facts, then the issue is one for trial. See id.

Dr. Feinerman argues that he is entitled to qualified immunity, asserting that "there is no case law or evidence to indicate that a physician using his best judgment based on his education, experience, and expertise in providing medical care constitutes a violation of an individual's constitutional rights." Def.'s Mem. in Supp. of Mot. for Summ. J. [d/e 71], 32.

Dr. Feinerman argues that Greeno v. Daley is the most factually similar case from the Seventh Circuit, and that, because it is distinguishable, he is immune. Dr. Fenierman points out that in Greeno, the medical staff refused to treat Mr. Greeno,

while in this case, Mr. Keller "has been seen by surgeons, provided CT scans of his head and neck, given a biopsy of his lymph nodes, and evaluated by [an] Ear, Nose and Throat specialist." Def.'s Mem. in Supp. of Mot. for Summ. J. [d/e 71], 32.

The Plaintiff notes that the deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment prohibition against cruel and unusual punishment. See Hayes v. Snyder, 546 F.3d 516, 522 (7th Cir. 2008). There is no question that this general rule is clearly established. The Plaintiff claims that he has shown that he made every effort to inform Dr. Feinerman of his serious medical condition. Nevertheless, according to the Plaintiff, his condition was not properly treated, which resulted in the Plaintiff enduring severe and ongoing pain.

Relying on Hayes, the Plaintiff notes that the standard regarding deliberate indifference has long been established. See Hayes, 546 F.3d at 528 ("It has been established for decades that prison physicians violate inmates' constitutional rights when they deliberately disregard an inmate's serious medical condition").

Turning to Greeno, the Plaintiff states the following:

> The facts of this case are substantially similar to Greeno. Here, despite Dr. Feinerman's knowledge of Plaintiff's lengthy history of G.E.R.D. and of the fact that other physicians had recommended sending Plaintiff to an outside E.N.T. specialist, Dr. Feinerman withheld Mr. Keller's referral for nearly a year. The fact that Mr. Keller was, at some point, referred to specialists does not make the length of time Dr. Feinerman waited to do so reasonable. Defendant recites the number of tests performed on Mr. Keller. Yet, over the course of several years,

10

> which is how long Mr. Keller has been suffering from G.E.R.D. symptoms, this does not necessarily demonstrate proper treatment. A plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer that the treatment was so blatantly inappropriate as to evince intentional mistreatment. That Dr. Feinerman eventually succumbed and sent Mr. Keller to an E.N.T. only serves to reinforce the fact that there had been a need for Mr. Keller to see an E.N.T. all along.

Pl.'s Mem. in Opp'n to Mot. for Summ. J. [d/e 77], 21-22 (alteration, quotation marks, and citations omitted).

The Court recognizes that this is a close issue, but in the end, it finds the Plaintiff's arguments more persuasive. The Court finds that Greeno v. Daley did provide Dr. Feinerman notice that the alleged conduct would violate the Plaintiff's rights. Accordingly, Dr. Feinerman does not enjoy qualified immunity.

Alternatively, the multitude of disputed material facts prevent the Court from determining that Dr. Feinerman is entitled to qualified immunity.

## IV. CONCLUSION

Ergo, Defendant Adrian Feinerman's Motion for Summary Judgment [d/e 70] is DENIED.

**IT IS SO ORDERED.**

**DATED: April 20, 2010**     */s/ Richard Mills*
                                                       **RICHARD MILLS**
                                                     **United States District Judge**